**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CARLOS AMEZCUA,<br><br>                         Petitioner,<br><br>v.<br><br><br>JOE A. LIZARRAGA, Warden,<br>                         Respondent. | Case No.: 18cv1317 GPC (MSB)<br><br>**ORDER:**<br><br>**(1) DENYING PETITION FOR WRIT OF HABEAS CORPUS and**<br><br>**(2) GRANTING CERTIFICATE OF APPEALABILITY IN PART AND DENYING IN PART** |

## I.    INTRODUCTION

Petitioner Carlos Amezcua (Petitioner" or "Amezcua"), a state prisoner proceeding pro se, has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, challenging his San Diego Superior Court conviction in case number SCD258616 for six counts of lewd and lascivious acts on a child under 14 years of age.  (Pet. at 1, ECF No. 1 "Pet.")[1]  The Court has reviewed the Petition, the Answer and Memorandum of Points and Authorities in Support of the Answer, the lodgments, and all the supporting

_____

[1]  Page numbers for docketed materials cited in this Report and Recommendation refer to those imprinted by the court's electronic case filing system.

documents submitted by both parties.  For the reasons discussed below, the Court the Petition is **DENIED**.

## II.    FACTUAL BACKGROUND

This Court gives deference to state court findings of fact and presumes them to be correct; Petitioner may rebut the presumption of correctness, but only by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1) (West 2006); *see also Parke v. Raley*, 506 U.S. 20, 35-36 (1992) (holding findings of historical fact, including inferences properly drawn from those facts, are entitled to statutory presumption of correctness).  The following facts are taken from the California Court of Appeal opinion:

> This case involves Amezcua's molestation of two female relatives when they were young girls, Jane Doe 1 and Jane Doe 2.
>
> The molestation first came to light when Jane Doe 1, who was 22 years old at the time of trial, disclosed to a relative that Amezcua had molested her when she was eight years old.  Family members confronted Amezcua about the allegations, and he admitted to having molested Jane Doe 1.  He also disclosed to family members that he had molested Jane Doe 2, who was 13 years old at the time of trial.
>
> In an interview with police that was video-recorded and played for the jury at trial, Amezcua admitted to molesting Jane Doe 1 and Jane Doe 2 and described the details of the molestations.
>
> As to Jane Doe 1, Amezcua told police that on at least three occasions when Jane Doe 1 was eight or nine years old, he rubbed her buttocks and vagina while cuddling with her.  In addition, Amezcua recalled one occasion when he put Jane Doe 1's hand on his penis for a few seconds.  As to Jane Doe 2, Amezcua stated that he started touching Jane Doe 2 on the buttocks and vagina over her clothing when she was approximately seven years old.  According to Amezcua, he touched Jane Doe 2 in that manner "a few times" when he lived at a residence in Riverside County, including one instance during which he touched Jane Doe 2's bare skin beneath her underwear.  Amezcua also stated that later, when he moved to San Diego and Jane Doe 2 was approximately 10 years old, he touched Jane Doe 2's buttocks and vagina on one occasion over her clothes.  Amezcua told police that he was "aroused" during the molestation of the two girls, but he claimed that he never had an erection.

Amezcua was charged with five counts of committing lewd acts against Jane Doe 1 (counts 1–5) and seven counts of committing lewd acts against Jane Doe 2 (counts 6–12). (§ 288, subd. (a).) The information described the acts that gave rise to each count. As to the counts concerning Jane Doe 2, three of them were alleged to have taken place at Amezcua's San Diego residence and four of them at his Riverside County residence. Counts 6, 9, 10, 11 and 12 were based on allegations that Amezcua touched Jane Doe 2's vagina. Counts 7 and 8 alleged a touching of Jane Doe 2's buttocks and Jane Doe 2's chest, respectively.

Jane Doe 1 testified that when she was eight years old, Amezcua molested her in the same manner on six or seven occasions. Specifically, on each occasion Amezcua would rub Jane Doe 1's clitoris beneath her underwear, touch her breasts and put her hand on his erect penis over his clothes. On one occasion Amezcua also put his mouth on Jane Doe 1's breast and licked her nipple. According to Jane Doe 1, Amezcua suggested that she not tell anyone about the molestation.

Jane Doe 2 testified that when she was 11 or 12 years old Amezcua molested her on two occasions, and both occurred at his residence in San Diego. According to Jane Doe 2, Amezcua touch her vagina on only one occasion. Specifically, Jane Doe 2 stated that on that occasion, Amezcua caressed her arms and touched her vagina with a "slight tap" over her clothes. On the second occasion, Amezcua caressed her arm and also touched her chest near her collarbone but did not touch her vagina. When the prosecutor followed up with Jane Doe 2 about whether Amezcua touched her vagina on a second occasion, Jane Doe 2 reiterated that Amezcua did not. When the prosecutor followed up as to whether Amezcua had molested Jane Doe 2 on more than two occasions, Jane Doe 2 stated that there was no third occasion on which Amezcua molested her. Jane Doe 2 testified that Amezcua told her not to tell anyone about the molestation.

Amezcua testified at trial. He stated that he had touched Jane Doe 1 as he described during his police interview, but stated that it was done in a "playful" manner and that he did not touch her to become sexually aroused. He denied that he ever directly touched Jane Doe 1's clitoris underneath her clothes and claimed that the only time Jane Doe 1 touched his penis was by accident when he was picking her up.

///

///

As to Jane Doe 2, Amezcua testified that he touched her on only two occasions, stating "I remember two situations with [Jane Doe 2], just two situations." Although Amezcua provided sparse detail during his testimony about the ways in which he touched Jane Doe 2 on those two occasions, he did admit that he touched Jane Doe 2's vagina on one occasion at his San Diego residence.

Later in his testimony, Amezcua admitted that he touched Jane Doe 2's vagina at the Riverside County residence. On that subject the following testimony was presented at trial when the prosecutor asked Amezcua about a description of the molestation at the Riverside County residence that Amezcua had given to police:

"[Prosecutor]: Do you remember the detective asking you, can you tell me what happened with [Jane Doe 2]? And then you replied, 'It was again, cuddling, playing. I noticed that -- uh, see if I could touch her, and I did. In the back again, start . . . in the rear end and rubbed her thighs and again in her private part.' You reference that section of your interview. Would it be fair to say that that instance of the touching was not an accident?

"[Amezcua]: Yes, it was not an accident.

"[Prosecutor]: You did it on purpose?

"[Amezcua]: Yes."

[Footnote 2: Earlier in his testimony Amezcua also seemed *generally* admit to this same molestation at his Riverside County residence when the prosecutor asked him about his statements to police about that incident.

Prosecutor: You told the detective you were playing piggyback or goofy games and that you and touched her – and this was at the [Riverside County] house – you touched her on her vagina on that occasion.

[Amezcua]: I think so.

/ / /

/ / /

> [Prosecutor]: And then they asked you how many more times it happened. You said three more times at the [Riverside County] house' is that correct?
>
> [Amezcua]: I remember two situations with [Jane Doe 2], just two situations.]
>
> Amezcua also testified that he did not touch Jane Doe 2 with any sexual intent and did not consider himself to be a child molester because he had no desire to penetrate either of the girls or to have sex with them. Although admitting that he told the police that he was "aroused" during the molestations, he tried to minimize that statement during his trial testimony by claiming that "[i]t was aroused in the sense of thinking, I shouldn't be doing this" and it "wasn't related to . . . sexual desire."

(Lodgment No. 6 at 2-7, ECF No. 7-10.)

## III.  PROCEDURAL BACKGROUND

On March 30, 2015, the San Diego District Attorney's Office filed an information charging Amezcua with twelve counts of committing a lewd act upon a child under the age of fourteen, pursuant to California Penal Code section 288(a). (Lodgment No. 1, Clerk's Tr. at 24-26, ECF No. 7-1.) Five counts involved Petitioner's conduct with Jane Doe 1 between April 11, 2001 to April 11, 2003 (counts 1–5); three counts involved his conduct with Jane Doe 2 between October 16, 2011 and October 16, 2013 (counts 6–8); and four counts were related to conduct with Jane Doe 2 between October 16, 2009 and October 16, 2011 (counts 9–12). (*Id.* at 26-32.)

As to counts one through six and nine through twelve, it was further alleged that Amezcua committed the offenses against more than one victim and had substantial sexual conduct with a victim under 14 years of age, pursuant to California Penal Code sections 1203.066(a)(7) and (a)(8). (*Id.* at 26-31.) As to all counts it was also alleged that Petitioner committed the offenses against more than one victim, under California Penal Code sections 667.61(b), (c) & (e). (*Id.*)

Jury trial began on August 26, 2015. (*Id.* at 247.) On September 1, 2015, after the close of evidence, defense counsel moved for a judgment of acquittal as to all counts,

under California Penal Code section 1118.1.[2]  (Lodgment No. 2, Rep.'s Tr. vol. 2 at 18-22, ECF No. 7-3.)  The trial court granted Amezcua's motion to dismiss the section 1203.066(a)(8) allegation as to count six and denied the motion as to all other counts. (*Id.* at 26.)  The jury began deliberations on September 1, 2015.  (*See* Lodgment No. 1, Clerk's Tr. at 256, ECF No. 7-1.)

On September 8, 2015, the jury returned guilty verdicts on counts two, four, six, seven, nine and ten.  (*Id.* at 170-79.)  The jury further found true the section 1203.066(a)(7) allegations attached to counts two, four, six, nine and ten.  (*Id.* at 170, 172, 174, 176, 178.)  The jury also found the section 667.61 allegations to be true.  (*Id.* at 170-79.)  The jury deadlocked on counts one, three, five, eight, eleven and twelve. (Lodgment No. 2, Rep.'s Tr. vol. 3, at 41-43, ECF No. 7-4; *see also* Lodgment No. 1, Clerk's Tr. at 268-69, ECF No. 7-1.)  The trial court declared a mistrial on those counts and they were later dismissed on the prosecutor's motion.  (Lodgment No. 2, Rep.'s Tr. vol. 3 at 42, ECF No. 7-4; *see also* Lodgment No. 1, Clerk's Tr. at 272, ECF No. 7-1.) On December 16, 2015, the trial court sentenced Amezcua to 45 years to life in prison.[3] (Lodgment No. 1, Clerk's Tr. at 218-19, 277-79, ECF No. 7-1.)

/ / /

---

[2]  Section 1118.1 states:

> In a case tried before a jury, the court on motion of the defendant or on its own motion, at the close of the evidence on either side and before the case is submitted to the jury for decision, shall order the entry of a judgment of acquittal of one or more of the offenses charged in the accusatory pleading if the evidence then before the court is insufficient to sustain a conviction of such offense or offenses on appeal.

Cal. Penal Code § 1118.1.

[3]  The court sentenced Petitioner to an indeterminate term of 15 years to life on count two; a determinate upper term of eight years on count four, to run concurrently; an indeterminate term of 15 years to life on count six, to run consecutively; an indeterminate term of 15 years to life on count seven, to run concurrently; an indeterminate term of 15 years to life on count nine, to run consecutively; and an indeterminate term of 15 years to life on count ten, to run concurrently.  (Lodgment No. 1, Rep.'s Tr vol. 5 at 12-13, ECF No. 7-6; *see also* Lodgment No. 1, Clerk's Tr. at 218-19, 277, ECF No. 7-1.)

1          Amezcua appealed his conviction to the California Court of Appeal. (*See*

2 Lodgment No. 3, ECF No. 7-7.) On appeal, Petitioner argued that (1) his convictions on

3 counts six, seven, nine and ten should be reversed because they were not supported by

4 substantial evidence, (2) all counts related to Jane Doe 2 should be reversed because there

5 was insufficient evidence to establish the requisite specific intent, (3) the prosecutor

6 committed misconduct during closing argument, and (4) trial counsel was ineffective.

7 (*See id.*) On March 10, 2017, the California Court of Appeal affirmed Petitioner's

8 convictions in a reasoned opinion. (*See* Lodgment No. 6, ECF No. 7-10.)

9          Amezcua then filed a petition for review in the California Supreme Court, raising

10 the same claims he presented to the appellate court. (*See* Lodgment No. 7, ECF No. 7-

11 11.) The court denied the petition on June 15, 2017, without comment or citation. (*See*

12 Lodgment No. 8, ECF No. 7-12.)

13          On June 18, 2018, Amezcua, proceeding pro se, filed a petition for writ of habeas

14 corpus pursuant to 28 U.S.C. § 2254 in this Court. (*See* Pet., ECF No. 1.) On August 31,

15 2018, Respondent filed an Answer, a Memorandum of Points and Authorities in Support

16 of the Answer and Lodgments of the state court records. (*See* ECF Nos. 6 & 7.)

17 **IV.    SCOPE OF REVIEW**

18          Amezcua's Petition is governed by the provisions of the Antiterrorism and

19 Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320

20 (1997). Under AEDPA, a habeas petition will not be granted unless the adjudication: (1)

21 resulted in a decision that was contrary to, or involved an unreasonable application of

22 clearly established federal law; or (2) resulted in a decision that was based on an

23 unreasonable determination of the facts in light of the evidence presented at the state

24 court proceeding. 28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 8 (2002).

25          A federal court is not called upon to decide whether it agrees with the state court's

26 determination; rather, the court applies an extraordinarily deferential review, inquiring

27 only whether the state court's decision was objectively unreasonable. *See Yarborough v.*

28 *Gentry*, 540 U.S. 1, 4 (2003); *Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir. 2004). In

order to grant relief under § 2254(d)(2), a federal court "must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record." *See Taylor v. Maddox*, 366 F.3d 992, 1001 (9th Cir. 2004).

A federal habeas court may grant relief under the "contrary to" clause if the state court applied a rule different from the governing law set forth in Supreme Court cases, or if it decided a case differently than the Supreme Court on a set of materially indistinguishable facts. *See Bell v. Cone*, 535 U.S. 685, 694 (2002). The court may grant relief under the "unreasonable application" clause if the state court correctly identified the governing legal principle from Supreme Court decisions but unreasonably applied those decisions to the facts of a particular case. *Id.* Additionally, the "unreasonable application" clause requires that the state court decision be more than incorrect or erroneous; to warrant habeas relief, the state court's application of clearly established federal law must be "objectively unreasonable." *See Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 411 (2000). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the underlying appellate court decision and presumes it provides the basis for the higher court's denial of a claim or claims. *See Ylst v. Nunnemaker*, 501 U.S. 797, 805-06 (1991). If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application

of, clearly established Supreme Court law. *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000) (overruled on other grounds by *Andrade*, 538 U.S. at 75-76); *accord Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). However, a state court need not cite Supreme Court precedent when resolving a habeas corpus claim. *See Early*, 537 U.S. at 8. "[S]o long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent,]" id., the state court decision will not be "contrary to" clearly established federal law. *Id.* Clearly established federal law, for purposes of § 2254(d), means "the governing principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Andrade*, 538 U.S. at 72.

## V.    DISCUSSION

Amezcua raises four grounds for relief. In both claims one and two, he argues his convictions on counts six, seven, nine and ten were based on insufficient evidence, in violation of his right to due process. (Pet. at 6-7, ECF No. 1.) In ground three, Petitioner argues that the prosecutor misstated the law during closing argument, in violation of his due process rights. (*Id.* at 8.) Finally, in ground four, Amezcua contends that counsel was ineffective in failing to object to the prosecutor's purportedly improper closing argument, in violation of his Sixth Amendment rights. (*Id.* at 9.)

Respondent argues that ground one is not cognizable on federal habeas and that ground three is procedurally defaulted. (*See* Mem. P. & A. Supp. Answer at 10-11, 14, ECF No. 6-1.) Respondent further argues that Amezcua's remaining claims are without merit because the state court's denial of them was neither contrary to, nor an unreasonable application of, clearly established law. (*See id.* at 11-16.) For ease of analysis, the Court will address Petitioner's claims in a different order than presented in the Petition.

### A.    Sufficiency of Evidence: Specific Intent (ground two)

Amezcua contends that his convictions on counts six, seven, nine and ten were based on insufficient evidence to support a finding that he touched Jane Doe 2 with the requisite specific intent. (Pet. at 7, ECF No. 1.) Respondent argues that the state court's

denial of the claim was neither contrary to, nor an unreasonable application of, clearly established federal law. (Mem. P. & A. Supp. Answer at 11-13, ECF No. 6-1.)

### 1. *State Court Decision*

As noted above, Amezcua raised this claim in his petition for review to the California Supreme Court. (*See* Lodgment No. 7, ECF No. 7-11.) The court denied the petition without comment or citation. (Lodgment No. 8, ECF No. 7-12.) As such, this Court looks through to the last reasoned state court opinion, that of the California Court of Appeal. *See Ylst*, 501 U.S. at 805-06.

The appellate court denied the claim, stating:

> Amezcua contends that none of the lewd act convictions arising out of his touching of Jane Doe 2 are supported by sufficient evidence because the evidence does not support a finding that he performed the touching with any sexual intent.
>
> In considering a challenge to the sufficiency of the evidence, "we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence -- that is, evidence that is reasonable, credible, and of solid value -- from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] We presume every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. [Citation.] 'A reviewing court neither reweighs evidence nor reevaluates a witness's credibility.'" (*People v. Albillar* (2010) 51 Cal. 4th 47, 60.)
>
> Amezcua was convicted of committing lewd acts against a child under section 288, subdivision (a) for touching Jane Doe 2's vagina. That provision makes it a crime when "any person . . . willfully and lewdly commits any lewd or lascivious act . . . upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child."

/ / /

"[S]ection 288 'prohibits all forms of sexually motivated contact with an underage child. . . .' [Citation.]   Thus, any touching of a child under the age of 14 is a felony offense 'even if the touching is outwardly innocuous and inoffensive, if it is accompanied by the intent to arouse or gratify the sexual desires of either the perpetrator or the victim.' [Citations.] . . . [¶] To determine whether a defendant acted with sexual intent, all the circumstances are examined.  Relevant factors include the nature and manner of the touching, the defendant's extrajudicial statements, the relationship of the parties and 'any coercion, bribery or deceit used to obtain the victim's cooperation or avoid detection.' [Citation.]  The requisite intent 'must be inferred from all the circumstances. . . .'" (*In re R.C.* (2011) 196 Cal.App.4th 741, 749-750.)

Here, substantial evidence supports a finding that Amezcua acted with sexual intent in touching Jane Doe 2.  The strongest evidence of Amezcua's intent in touching Jane Doe 2 is found in his own admissions during the police interview.  Amezcua told the police that he was "aroused," although without an erection, when he touched Jane Doe 1 and Jane Doe 2.  Further, Jane Doe 1 testified that Amezcua's penis was erect when he made her touch it during the molestations.  From this testimony, a reasonable juror could infer that touching young girls is arousing to Amezcua because it is sexually stimulating to him, and that is why he committed the acts.

Although Amezcua attempted during his trial testimony to minimize his admission to being "aroused" during the molestations by claiming that he meant "aroused in the sense of thinking, I shouldn't be doing this," and claimed that he did not touch Jane Doe 2 for any sexual purpose, it was for the jury to decide whether to credit Amezcua's trial testimony on that issue.  A reasonable juror could decide that Amezcua's attempt to minimize his admission to police was not credible because it contradicted his earlier statements and there is no sensible explanation for why someone in Amezcua's position would touch a young girl's vagina except for the purpose of sexual stimulation.

Amezcua's sexual intent in touching Jane Doe 2 is also shown by evidence supporting a finding that Amezcua knew that what he was doing was wrong.  Specifically, (1) Amezcua told Jane Doe 2 not to tell anyone about the touching; (2) Amezcua admitted that he knew he was "not supposed to do this" while he was touching Jane Doe 2; and (3) Amezcua described his thought process upon initiating the molestation as "[my] stupid brain would take me down that way."  A reasonable juror could infer that

because Amezcua viewed his acts as improper, because the touching involved a young girl in various places, including her vagina, and Amezcua used the word "aroused" when explaining his state of mind, Amezcua was doing the acts with sexual intent.

In sum, under the totality of the circumstances, we conclude that ample evidence supports a finding that Amezcua's touching of Jane Doe 2 was done "with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child."  (§ 288, subd. (a).)

(Lodgment No. 6 at 13-16, ECF No. 7-10.)

### 2.   Discussion

It is clearly established that due process clause is violated "if it is found that upon the evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *see also Cavazos v. Smith*, 565 U.S. 1, 7 (2011) (per curiam ); *Juan H. v. Allen*, 408 F.3d 1262, 1275 (9th Cir. 2005).  This Court must review the state court record and view the evidence in the "light most favorable to the prosecution and all reasonable inferences that may be drawn from this evidence." *Juan H*., 408 F.3d at 1276 (citing *Jackson*, 443 U.S. at 319).

A petitioner faces a "heavy burden" when seeking habeas relief by challenging the sufficiency of evidence used to obtain a state conviction on federal due process grounds. *Juan H*., 408 F.3d at 1274.  The federal habeas court must "apply the standards of *Jackson* with an additional layer of deference" under Section 2254(d)(1). *Id*.; *see also Coleman v. Johnson*, 566 U.S. 650, 651 (2012) ("We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference.").  This doubly deferential standard limits the federal habeas court's inquiry to whether the state court's rejection of a sufficiency of the evidence challenge was an objectively unreasonable application of *Jackson*.  *Emery v. Clark*, 643 F.3d 1210, 1214 (9th Cir. 2011); *see also Johnson*, 566 U.S. at 651.

/ / /

Furthermore, "[c]ircumstantial evidence and inferences drawn from that evidence may be sufficient to sustain a conviction." *Walters v. Maass*, 45 F.3d 1355, 1358 (9th Cir. 1995) (quoting *United States v. Lewis*, 787 F.2d 1318, 1323 (9th Cir.) amended on denial of reh'g, 798 F.2d 1250 (9th Cir. 1986)). A petitioner's insufficient evidence claim must be examined "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Chein v. Shumsky*, 373 F.3d 978, 983 (9th Cir. 2004) (en banc) (quoting *Jackson*, 443 U.S. at 324 n. 16).

California Penal Code section 288(a) states, in relevant part:

> Except as provided in subdivision (i), any person who willfully and lewdly commits any lewd or lascivious act . . . upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony.

Cal. Penal Code § 288(a). The statute is violated if there is "'any touching' of an underage child accomplished with the intent of arousing the sexual desires of either the perpetrator or the child." *People v. Martinez*, 11 Cal. 4th 434, 452 (Cal. 1995). In short, the offense has two elements: "(a) the touching of an underage child's body (b) with a sexual intent." *United States v. Baron-Medina*, 187 F.3d 1144, 1147 (citing *Martinez*, 11 Cal.4th at 452); *United States v. Farmer*, 627 F.3d 416, 419 (9th Cir. 2010).

To satisfy the intent element, the prosecution must establish that the defendant had "the specific intent of arousing, appealing to, or gratifying the lust of the child or the accused." *People v. Warner*, 39 Cal. 4th 548, 557 (Cal. 2006). "Because intent for purposes of . . . section 288 can seldom be proven by direct evidence, it may be inferred from the circumstances." *In re Mariah T.*, 159 Cal. App. 4th 428, 440 (Cal. App. 2008).

Where the "defendant's physical conduct might be consistent with a nonsexual purpose, the jury can look to surrounding circumstances and rely on them to draw inferences about his intent." *People v. Valenti*, 243 Cal. App. 4th 1140, 1160 (Cal. App. 2016). Relevant factors can include a defendant's "extrajudicial statements, other acts of lewd conduct admitted or charged in the case, the relationship of the parties, and any

coercion, bribery, or deceit used to obtain the victim's cooperation or to avoid detection." *Martinez*, 11 Cal. 4th at 445 (internal citations omitted).

Here, as the appellate court discussed, Amezcua stated during his interview with detectives that when he touched both Jane Does 1 and 2, he was "[a]roused but not where, um with erections but aroused." (*Id.* at 94.) He admitted that he was "mentally. . . aroused." (*Id.*) This alone could have been enough for a reasonable juror to infer that Petitioner touched Jane Doe 2 with "specific intent to arousing, appealing to, or gratifying the lust" of Petitioner. *See Warner*, 39 Cal. 4th at 557.

In addition, Amezcua stated during his interview that he was attracted to Jane Doe 2's physical appearance. When detectives asked Petitioner why he had singled out Jane Does 1 and 2 and not his other grandchildren, the following exchange took place:

[Detective]: Was it . . . did they have a certain personality that really . . . that you identified with? And what about them was it that was exciting?

Amezcua: Their rear-end, their butts.

[Detective]: What's different about say Ashley, or Alexa, or Hope's rear-end that isn't the same as theirs?

Amezcua: It didn't, uh, it never attracted me in that, in that way. . . .

[Detective]: What about [Jane Doe 2]? Was there a specific incident that set that off?

Amezcua: No, other than she's very boisterous, very loud, very playful. And she's gonna be a beautiful girl, very, very beautiful. She's gonna be a beautiful young, young woman.

[Detective]: But for her [it] was her butt? Just the way it looked?

Amezcua: The way it was shaped.

[Detective]: Yeah. And so when you would put your hands down their pants I mean what was the goal.

| | |
|---|---|
| Amezcua: | They were . . . they really didn't know what was goin' on. I'll be honest with you they didn't know what was goin' on. |
| [Detective]: | I would imagine that they wouldn't. What was your goal? |
| Amezcua: | My goal was to satisfy this thought. |
| [Detective]: | And what's that thought? |
| Amezcua: | That I was touching their private, their, their vaginas, in my mind. |

(Lodgment No. 1, Clerk's Tr. at 106-08, ECF No. 7-1.) Amezcua also stated that once Jane Doe 2 was about 14 years old, he had "no attraction" to her anymore. He admitted that his could have been because she had gotten older. (*Id.* at 100.) Amezcua urged Jane Doe 2 not to tell anyone about the touching. (Lodgment No. 1, Clerk's Tr. at 86.) Given Petitioner's statements about his "attraction" to Jane Doe 2 and his attempt to hide his conduct from others, a reasonable juror could have inferred that he touched her with sexual intent. *See Martinez*, 11 Cal. 4th at 445.

Finally, a reasonable juror could have inferred Petitioner's sexual intent as to Jane Doe 2 based on the testimony of Jane Doe 1. As the appellate court noted, Jane Doe 1 testified that on more than one occasion, Amezcua had rubbed her clitoris and her breasts for about 15 minutes. While he did this, Petitioner put Jane Doe 1's hand on his erect penis. (Lodgment No. 1, Rep.'s Tr. vol. 1 at 115-16, 118.) During his interview with detective, Amezcua admitted that he put Jane Doe 1's hand on his penis. (Lodgment No. 1, Clerk's Tr. vol. 1 at 92-93.) Although Petitioner denied that his penis was erect, he conceded that he was "aroused." (*Id.* at 94.) The jury was permitted to consider Jane Doe 1's testimony that Petitioner placed her hand on his erect penis several times as circumstantial evidence of Petitioner's sexual intent while touching Jane Doe 2. *See Martinez*, 11 Cal. 4th at 445 (holding that a jury may consider the surrounding circumstances and rely on them to draw inferences about a defendant's specific intent, including evidence of "other acts of lewd conduct admitted or charged in the case"); *see*

*also People v. Gilbert*, 5 Cal. App. 4th 1372, 1380 (Cal. App. 1992). While Amezcua testified at trial that his touching of Jane Does 1 and 2 not "sexual" (Lodgment No. 2, vol. 1 at 182), it was for the jury to resolve any evidentiary conflicts. *Walters v. Maass*, 45 F.3d 1355, 1358 (9th Cir. 1995). And under *Jackson*, the jury's credibility determination is "entitled to near-total deference." *Bruce v. Terhune*, 376 F.3d 950, 957 (9th Cir. 2004).

Based on the foregoing and viewing all the evidence and all reasonable inferences in the light most favorable to the verdict, there is sufficient evidence to support the jury's implicit finding that Amezcua touched Jane Doe 2 with sexual intent. A reasonable juror could have inferred such intent from Petitioner's pretrial statements, his trial testimony and the testimony of both Jane Doe 1 and Jane Doe 2. *See Jackson*, 443 U.S. at 319. Accordingly, the state court's denial of Amezcua's claim was neither contrary to, nor an unreasonable application of, clearly established law. *See* 28 U.S.C. § 2254(d); *Williams*, 529 U.S. at 407-08. The claim is **DENIED.**

### B. Sufficiency of Evidence: Corpus Delicti (ground one)

Amezcua argues that there was insufficient evidence to support his convictions on counts seven, nine and ten because the prosecution failed to establish corpus delicti as to those counts. (Pet. at 6, ECF No. 1.) Respondent argues that Petitioner has failed to raise a cognizable claim on federal habeas and as such, the claim must be dismissed. (Mem. P. & A. Supp. Answer at 10-11, ECF No. 6-1.)

#### 1. State Court Decision

Amezcua raised this claim in his petition for review to the California Supreme Court, which was denied without comment or citation. (*See* Lodgment Nos. 7 & 8, ECF Nos. 7-10, 7-12.) This Court therefore looks through the silent denial to the California Court of Appeal's reasoned decision. *See Ylst*, 501 U.S. at 805-06. In denying the claim,[4] the appellate court stated:

---

[4] One appellate justice on the three-judge panel dissented on the issue of corpus delicti, stating that "no evidence was presented at trial, independent of Amezcua's extrajudicial statements, that Amezcua touched Jane Doe 2's buttocks at the San Diego residence as alleged in count 7 or that he touched Jane

We first consider Amezcua's contention that the evidence was insufficient to convict him of three of the counts alleging lewd acts against Jane Doe 2 (counts 7, 9 & 10) because the prosecution did not establish the corpus delicti of those offenses and improperly premised the convictions solely on Amezcua's extrajudicial statements.

"In every criminal trial, the prosecution must prove the corpus delicti, or the body of the crime itself—i.e., the fact of injury, loss, or harm, and the existence of a criminal agency as its cause." (*People v. Alvarez* (2002) 27 Cal.4th 1161, 1168.) "Though no statute or constitutional principle requires it, California, like most American jurisdictions, has historically adhered to the rule that the . . . corpus delicti . . . cannot be proved by exclusive reliance on the defendant's extrajudicial statements." (*Id.* at p. 1165.) Put another way, "[t]he corpus delicti rule requires the prosecution to prove that 'the charged crime actually happened' exclusive of the accused's extrajudicial statements." (*People v. Ray* (1996) 13 Cal.4th 313, 342, italics added.) "This rule is intended to ensure that one will not be falsely convicted, by his or her untested words alone, of a crime that never happened." (*Alvarez*, supra, at p. 1169, italics added.)

Although the corpus delicti rule requires that the prosecution present proof that a crime occurred independent of the defendant's extrajudicial statements, "[t]he independent proof may be by circumstantial evidence [citation], and it need not be beyond a reasonable doubt. A slight or prima facie showing, permitting the reasonable inference that a crime was committed, is sufficient. [Citation.] If the independent proof meets this threshold requirement, the accused's admissions may then be considered to strengthen the case on all issues." (*People v. Alcala* (1984) 36 Cal.3d 604, 624–625.)

In *People v. Jennings* (1991) 53 Cal.3d 334, 368, the court explained the minimal burden of proof required for corpus delicti, and the reasons for the rule. The court said:

///

---

Doe [2's] vagina, skin-to-skin at the Riverside residence as alleged in count 9." (Lodgment No. 6 at 25, ECF No. 7-10.) The dissenting justice concluded that "the convictions in counts 7 and 9 were *not* supported by sufficient evidence due to the operation of the corpus delicti rule." *Id.* (emphasis in original). As for count ten, the dissenting justice concluded that it was supported by admissions made by Amezcua during his trial testimony, independent of his extrajudicial statements, and as such the corpus delicti rule did not undermine his conviction on count ten. *Id.*

18cv1317 GPC (MSB)

"We reemphasize that the quantum of evidence the People must produce in order to satisfy the corpus delicti rule is quite modest; case law describes it as a 'slight or prima facie' showing. [Citations.] This minimal standard is better understood when we consider that the purpose of the corpus delicti rule is 'to protect the defendant against the possibility of fabricated testimony which might wrongfully establish the crime and the perpetrator.' [Citation.] As one court explained, 'Today's judicial retention of the rule reflects the continued fear that confessions may be the result of either improper police activity or the mental instability of the accused, and the recognition that juries are likely to accept confessions uncritically.'" (*Id*. at p. 368.)

We infer from the court's comments that proof of corpus delicti is not intended to verify each detail of a defendant's out-of-court statements; rather it is to avoid false confessions, particularly those that might arise from the pressure of police interrogation. Consistent with the policy underlying the rule, courts in child molestation cases involving multiple acts, have not required count-by-count proof of corpus delicti. In *People v. Tompkins* (2010) 185 Cal.App.4th 1253 (*Tompkins*), the court squarely held that "separate evidence is not required as to each individual count to establish the corpus delicti; rather, evidence that multiple molestations took place will establish the corpus delicti for multiple counts." (*Id*. at p. 1260.)

The approach taken in *Tompkins*, supra, 185 Cal.App.4th 1253 is based on the observation that "[t]he testimony of young children concerning a series of events cannot be as perfect as a phonographic record thereof. It would practically close the doors against the prosecution of many of such wrongs if girls of tender years were required to give detailed and unvarying description of each transaction and its circumstances." (*People v. Durfee* (1947) 79 Cal.App.2d 632, 634.)

[Footnote 4: Similar to the liberal approach taken in cases considering whether the corpus delicti rule has been satisfied in child molestation cases, when sufficiency of the evidence of a child molestation conviction is challenged, courts apply the rule that a defendant may properly be convicted of acts of child molestation based on a witness's testimony that the defendant generally molested her in a specific manner

over the course of time, even if the witness is unable to provide details about "precise date, time, place or circumstance. (*People v. Jones* (1990) 51 Cal.3d 294, 315.)]

In *Tompkins*, the defendant was convicted of multiple counts of lewd acts against his minor daughter and argued that based on the corpus delicti rule, he should not have been convicted of six of the counts because "the only evidence to support those counts was his own statements" to an investigator, in which he described the specific acts of molestation. (*Tompkins*, supra, 185 Cal.App.4th at p. 1259.) *Tompkins* concluded that because the victim's testimony generally described numerous instances of molestation, including that "defendant molested her more than once but less than 50 times, [that] she had visitation with defendant approximately every other weekend during that period, and defendant molested her on some, but not all, of those visits," and she also told an investigator that the defendant had touched her "'on many occasions,'" the evidence "was amply sufficient" to establish the corpus delicti for the six specific counts of molestation that defendant challenged. (*Id*. at p. 1260.)

In *People v. Culton* (1992) 11 Cal.App.4th 363 (*Culton*), the corpus delicti for the defendant's conviction for 10 counts of committing a lewd act on a child was supplied by expert medical testimony from a doctor who performed a forensic genital examination of the victim. (*Id*. at pp. 365, 368.) Specifically, the doctor testified that the victim's physical condition was consistent with having been abused over a long period of time, which established the corpus delicti for all the offenses. (*Id*. at p. 372.)

Jane Doe 2 did not testify at trial to any of the acts described in counts 7, 9 and 10, as she described only two incidents: one in which Amezcua touched her arms and vagina at the San Diego residence; and one in which Amezcua touched her arms and her chest near the collarbone at the San Diego residence. However, during Amezcua's own testimony at trial, he admitted to committing the act charged in count 10, which was touching Jane Doe 2's vagina "over the clothes, the first time" at the Riverside County residence.

Specifically, as we have described above, Amezcua generally seemed to admit at trial that he touched Jane Doe 2 at his Riverside County residence as he described during his police interview.

/ / /

[Prosecutor]: You told the detectives you were playing piggyback or goofy games and that you had touched her -- and this was at the [Riverside County] house -- you touched her on her vagina on that occasion.

[Amezcua]: I think so.

[Prosecutor]: And then they asked you how many more times it happened. You said three more times at the [Riverside County] house; is that correct?

[Amezcua]: I remember two situations with [Jane Doe 2], just two situations."

Later in his trial testimony, Amezcua was asked about an admission during his police interview about the first incident at the Riverside County residence, and he specifically admitted that he purposely touched Jane Doe 2's vagina on that occasion.

[Prosecutor]: Do you remember the detective asking you, can you tell me what happened with [Jane Doe 2]? And then you replied, 'It was again, cuddling, playing. I noticed that -- uh, see if I could touch her, and I did. In the back again, start in the rear end and rubbed her thighs and again in her private part.' You reference that section of your interview. Would it be fair to say that that instance of the touching was not an accident?

[Amezcua]: Yes, it was not an accident.

[Prosecutor]: You did it on purpose?

[Amezcua]: Yes.

Amezcua seeks to distinguish both *Culton*, supra, 11 Cal.App.4th 363 and *Tompkins*, supra, 185 Cal.App.4th 1253, thus arguing his proposed count-by-count application of corpus delicti in child molestation cases is warranted. We find his proposed distinctions of controlling authority are not persuasive.

///

Amezcua contends *Culton*, supra, 11 Cal.App.4th 363 is distinguishable because there was medical testimony in that case which supported a finding of child molestation, perhaps on multiple occasions. In this case, there was no medical evidence. However, in *Culton* the defendant was convicted of multiple counts of child molestation, without independent evidence on a count-by-count basis. The court reasoned that the purpose of the corpus delicti rule did not require such an expanded form of corroboration.

Similarly, Amezcua argues *Tompkins*, supra, 185 Cal.App.4th 1253, which like *Culton*, supra, 11 Cal.App.4th 363, was decided by Division Two of our court, is distinguishable. The attempted distinction is that the *Tompkins* case relied on generalized testimony regarding on going child molestation, whereas Jane Doe 2's testimony in this case was specific. Again, we find the proposed distinction is not persuasive.

The court in *Tompkins* was very clear in its analysis of the application of corpus delicti in multiple count child molestation cases. The court said: "We read *Culton*[, supra, 11 Cal.App.4th 363] as standing for the proposition that separate evidence is not required as to each individual count to establish the corpus delicti; rather, evidence that multiple molestations took place will establish the corpus delicti for multiple counts." (*Tompkins*, supra, 185 Cal.App.4th at p. 1260.)

We are persuaded by the opinions in *Culton*, supra, 11 Cal.App.4th 363 and *Tompkins*, supra, 185 Cal.App.4th 1253 and follow their reasoning. We also find some independent evidence in Amezcua's testimony. Although Jane Doe 2 testified that no molestation occurred in Riverside County, Amezcua's testimony provides some independent evidence of such acts.

As we have quoted above, Amezcua testified that some "playful activities" involving Jane Doe 2, including touching her vagina, occurred in Riverside County. Jane Doe 2 also testified there was only one occasion of molestation, and that occurred in San Diego. Again, as we have quoted above, Amezcua testified there were "two instances" involving the touching of Jane Doe 2. Although Amezcua's testimony was often vague or inconsistent, a reasonable jury could conclude his testimony provided some independent evidence that Jane Doe 2 was molested twice, once in Riverside County and once in San Diego.

Based on the controlling appellate authority and on drawing all reasonable inferences in favor of the decision of the trier of fact, we are satisfied that the challenged conviction for counts involving Jane Doe 2 are supported by sufficient evidence of corpus delicti. Accordingly, we reject Amezcua's arguments to the contrary.

(Lodgment No. 6 at 7-13, ECF No. 7-10.)

### 2. *Discussion*

Respondent argues this claim must be denied because it is not cognizable on federal habeas. (Mem. P. & A. Supp. Answer at 10-11, ECF No. 6-1.) A person in custody pursuant to the judgment of a state court can obtain a federal writ of habeas corpus only grounds that he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). As such, federal habeas relief is generally not available for alleged errors of state law. *See Swarthout v. Cooke*, 562 U.S. 216, 219 (2011).

"In every criminal trial, the prosecution must prove the corpus delicti, or the body of the crime itself -- i.e., the fact of injury, loss, or harm, and the existence of a criminal agency as its cause. In California, it has traditionally been held, the prosecution cannot satisfy this burden by relying exclusively upon the extrajudicial statements, confessions, or admissions of the defendant." *People v. Alvarez*, 27 Cal. 4th 1161, 1168-69 (Cal. 2002). Generally, the corpus delicti rule requires a defendant's confession be corroborated by some independent evidence in order to serve as the basis for a conviction. *United States v. Lopez-Alvarez*, 970 F.2d 583, 589 (9th Cir. 1992). Only a slight or prima facie showing, permitting the reasonable inference that the crime was committed, is required. *People v. Ray*, 13 Cal. 4th 313, 342 (Cal. 1996). As explained in *Alvarez*, "once the necessary quantum of independent evidence is present, the defendant's extrajudicial statements may then be considered for their full value to strengthen the case on all issues." *Alvarez*, 27 Cal. 4th at 1171.

/ / /

/ / /

The California Supreme Court has stated that the requirement that some independent evidence support a defendant's extrajudicial statement is a matter of state law. *Alvarez*, 27 Cal. 4th at 1173 ("[i]t is undisputed that the corpus delicti rule is not a requirement of federal law"). Thus, to the extent Petitioner alleges purely a violation of California's corpus delicti law, his claim is not cognizable on federal habeas.

But here, Amezcua argues that his due process rights were violated because there was insufficient evidence, due to a lack of corpus delicti, to support his conviction and therefore amounted to a violation of the Due Process Clause under *Jackson v. Virginia*. (Pet. at 6, ECF No. 1.) Petitioner, however, cites no authority for the proposition that application of a state corpus delicti rule is constitutionally mandated in a *Jackson* analysis. Although the corpus delicti rule is applied in federal criminal cases,[5] it has not been held by the Supreme Court a requirement under the U.S. Constitution.

The Fifth Circuit Court of Appeals considered Texas' corpus delicti law in conjunction with a sufficieny of evidence claim and held that "'in challenges to state convictions under 28 U.S.C. § 2254, only *Jackson [v. Virgina]* need be satisfied, even if state law would impose a more demanding standard of proof.'" *West v. Johnson,* 92 F.3d 1385, 1394 (5th Cir. 1996). The Eighth Circuit has also held that there are "no constitutional rights are at stake" in raising a corpus delicti argument in a sufficiency of evidence claim. *Evans v. Luebbers*, 371 F.3d 438, 442 (8th Cir. 2004) (concluding Missouri's corpus delicti requirement that the prosecution present some independent proof of the death of the victim that the death was caused by human agency (i.e., not by accident or suicide), prior to introducing incriminating statement made by the defendant, was not cognizable on habeas review).[6] Thus, the misapplication of the corpus delicti

---

[5] As with California's corpus delicti rule, a defendant in a federal criminal case cannot be convicted based solely on his or her uncorroborated statements or confessions. *See Smith v. United States*, 348 U.S. 147, 153-54 (1954); *Wong Sun v. United States*, 371 U.S. 471, 489 (1963).

[6] Missouri's corpus delicti rule is somewhat different than California's. In Missouri, there must be corroborating evidence in order to admit the defendant's incriminating statements as evidence. *See*

rule does not appear to affect a federal constitutional right regarding the sufficiency of the evidence.

Nonetheless, even assuming Amezcua's claim is cognizable, he would not be entitled to relief. Ultimately, "[t]he issue for [the Court], always, is whether the state proceedings satisfied due process; the presence or absence of a state law violation is largely beside the point." *Jammal v. Van de Kamp*, 926 F.2d 918, 919-20 (9th Cir. 1991) ("While adherence to state evidentiary rules suggests that the trial was conducted in a procedurally fair manner, it is certainly possible to have a fair trial even when state standards are violated; conversely, state procedural and evidentiary rules may countenance processes that do not comport with fundamental fairness.").

In making that determination, this Court is bound by the state court's interpretation of California law unless its interpretation is so arbitrary or capricious such that it violates due process. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."); *Richmond v. Lewis*, 506 U.S. 40, 50 (1992) (state court's application of state law does not raise a cognizable federal question unless it was so arbitrary or capricious as to constitute an independent due process violation).

Here, Amezcua argues that his due process rights were violated because there was no corroborating evidence to support his conviction on counts seven, nine and ten. All three counts involved incidents that took place in Jane Doe 2's former residence in Winchester, California. (*See* Lodgment No. 1, Clerk's Tr. at 29-30, ECF No. 7-1.) At trial, Jane Doe 2 testified that Amezcua touched on only two occasions, both when she was living in San Diego, California. When asked if there were any other instances, she

_____

*Evans*, 371 F.3d at 442 (noting Missouri's corpus delicti rule is of an evidentiary nature). In contrast, under California's delicti rule a defendant's statements are admissible regardless of corroboration. *Alvarez*, 27 Cal. 4th at 1174 (holding that California's corpus delicti rule does not restrict the admissibility of incriminatory extrajudicial statements by the accused).

stated unequivocally that there were not.  (Lodgment No. 2, vol. 1 at 98, 106 ECF No. 7-2.)  Thus, her testimony provided no direct evidence to support counts seven, nine and ten.

As the appellate court found, in cases of child molestation, California courts have held that evidence of multiple molestations can provide corroboration sufficient to satisfy the corpus delicti rule.  In *People v. Tompkins*, 185 Cal. App. 4th 1253 (Cal. App. 2010), the prosecution charged the defendant with 11 counts of lewd and lascivious acts on a child under 14.  The defendant argued the corpus delicti rule prohibited convicting him of acts described only by his out-of-court statements to an investigator.  Relying on *People v. Culton*, 11 Cal. App. 4th 363 (Cal. App. 1992), the *Tompkins* court rejected the argument.  "We read *Culton* as standing for the proposition that separate evidence is not required as to each individual count to establish the corpus delicti; rather, evidence that multiple molestations took place will establish the corpus delicti for multiple counts. [Citation.]" *Tompkins*, 185 Cal. App. 4th at 1260.  In light of this case law, the appellate court reviewing Amezcua's claim concluded that the testimony from Jane Doe 1 and Jane Doe 2 as to other molestations was sufficient to satisfy corpus delicti as to counts seven, nine and ten.  (*See* Lodgment No. 6 at 12, ECF No. 7-10).

This Court defers to the California appellate court's construction of state law.  *See Bradshaw*, 546 U.S. at 76.  The state court's interpretation of the corpus delicti law was not arbitrary or capricious, *see Richmond*, 506 U.S. at 50, nor was it "untenable or amount[ing] to a subterfuge to avoid federal review of a constitutional violation."  *See Oxborrow v. Eikenberry*, 877 F.2d 1395, 1399 (9th Cir. 1989).  Thus, even if clearly established federal law protected Petitioner from conviction without corpus delicti, he has not shown that the state court erred, or that its decision was "untenable or amounts to a subterfuge to avoid federal review of a constitutional violation."  *See id*.; *see also Venegas v. Davey*, 2014 WL 2042057, at *14 (E.D. Cal. 2014) (dismissing claim,

/ / /

/ / /

explaining that federal habeas corpus court was bound by the state court's interpretation of the state's corpus delicti rule unless that interpretation was untenable or an attempt to avoid review of federal questions). Therefore, claim one is **DENIED.**

## C.  Prosecutorial Misconduct:  Closing Argument (ground three)

In ground three, Petitioner argues the prosecutor committed misconduct by misstating the corpus delicti rule during closing argument, violating his right to due process. (Pet. at 8, ECF No. 1.)  Respondent contends the claim must be denied because it is procedurally defaulted. (Mem. P. & A. Supp. Answer at 14, ECF No. 6-1.)

### 1.  State Court Decision

Amezcua raised this claim in his petition for review to the California Supreme Court and it was denied without comment or citation. (*See* Lodgment Nos. 7 & 8, ECF Nos. 7-11, 7-12.)  As such, this Court looks through to the California Court of Appeal's opinion. *See Ylst*, 501 U.S. at 805-06.  The appellate court denied Petitioner's claim, concluding that the claim was barred due to defense counsel's failure to object at trial. The court stated:

> Where a prosecutor uses deceptive or reprehensible methods to attempt to persuade a jury, he or she has committed misconduct. (*People v. Fuvia* (2012) 53 Cal. 4th 622, 679.)  However, a defendant may not raise an issue regarding the prosecutor's arguments for the first time on appeal. (*People v. Samayoa* (1997) 15 Cal. 4th 795, 841.)  Failure to timely object can be excused only where an objection would have been futile or where the harm caused by the prosecutor's argument cannot be cured by objection. (*Fuvia*, supra, at p. 679; *People v. Jablonski* (2006) 37 Cal. 4th 774, 835; *People v. Morales* (2001) 25 Cal. 4th 34, 43-44.)
>
> During closing arguments, the prosecutor said that he could prove corpus delicti of the offenses involving Jane Doe 2 by showing multiple molestations of her had occurred.  Amezcua now claims such comments were erroneous and caused him prejudice.  He recognizes failure to object during argument ordinarily forfeits the claim.  Amezcua claims, without support in the record, that an objection would have been futile.  We find nothing in the record to show that timely objection and admonition would not have cured any alleged error.  The jury had been properly instructed on the principles of corpus delicti, and they had been told the judge was the

person who stated the law, not the attorneys. We find nothing in the record to justify relieving Amezcua of the application of the long established rule that failure to timely object to arguments results in forfeiture of the issue. Accordingly, we do not discuss the merits of Amezcua's contentions on this issue.

(Lodgment No. 6 at 16-17, ECF No. 7-10.)

### 2. Procedural Default

Respondent argues this claim is procedurally defaulted because defense counsel failed to make a contemporaneous objection at trial. (Mem. P. & A. Supp. Answer at 14, ECF No. 6-1.) Because the appellate court clearly found that defense counsel failed to make a timely objection to the prosecutor's closing argument, this Court presumes the California Supreme Court found the claim barred for failure to object. *See Lee v. Jacquez*, 788 F.3d 1124, 1133 (9th Cir. 2015) ("If the California Supreme Court denies a habeas petition without explanation, the federal courts will presume that a procedural default was imposed if 'the last reasoned opinion on the claim explicitly impose[d] a procedural default.'")

"The procedural default doctrine 'bar[s] federal habeas [review] when a state court decline[s] to address a prisoner's federal claims because the prisoner has failed to meet a state procedural requirement.'" *Calderon v. United States District Court*, 96 F.3d 1126, 1129 (9th Cir. 1996) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)). The doctrine "'is a specific application of the general adequate and independent state grounds doctrine.'" *Id.* (quoting *Wells v. Maass*, 28 F.3d 1005, 1008 (9th Cir. 1994)). Federal courts "'will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" *Id.* (quoting *Coleman*, 501 U.S. at 729); *Park*, 202 F.3d at 1151.

The Ninth Circuit has held that because procedural default is an affirmative defense, Respondent must first have "adequately pled the existence of an independent and adequate state procedural ground." *Bennett v. Mueller*, 322 F.3d 573, 586 (9th Cir.

2003).  Once the defense is placed at issue, the burden shifts to the petitioner, who must then "assert[] specific factual allegations that demonstrate the inadequacy of the state procedure. . . ." *Id*.  The "ultimate burden" of proving procedural default, however, belongs to the state.  *Id*.  If the state meets this burden, federal review of the claim is foreclosed unless the petitioner can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 750.

Respondent contends California's contemporaneous objection rule is adequate and independent of federal law.  (*See* Mem. P. & A. Supp. Answer at 14, ECF No. 6-1.)  Thus, the burden shifts to Petitioner to assert "specific factual allegations" demonstrating the inadequacy of the rule.  *Bennett*, 322 F.3d at 586.  For his part, Amezcua provides no response to the procedural bar asserted by Respondent and therefore he has failed to meet his burden.  *See King v. LaMarque*, 464 F.3d 963, 967 (9th Cir. 2006) ("*Bennett* requires the petitioner to 'place [the procedural default] defense in issue' to shift the burden back to the government.").  Furthermore, the Ninth Circuit has determined that California's contemporaneous objection rule is "an independent and adequate state procedural rule" that bars federal habeas review of a claim.  *See Zapata v. Vasquez*, 788 F.3d 1106, 1111-12 (9th Cir. 2015) (concluding prosecutorial misconduct claim was procedurally defaulted where the where there was a complete failure to object at trial to alleged prosecutorial misconduct); *see also Tong Xiong v. Felker*, 681 F.3d 1067, 1075 (9th Cir. 2012); *Fairbank v. Ayers*, 650 F.3d 1243, 1257 (9th Cir. 2011); *Zapien v. Martel*, 849 F.3d 787, 793 n.2 (9th Cir. 2015); *Vansickel v. White*, 166 F.3d 953, 957-58 (9th Cir. 1999).

Amezcua's failure to comply with a state's contemporaneous objection rule therefore results in a procedural default that bars federal consideration of the claim unless he can establish cause for his noncompliance and actual prejudice, or demonstrate that a miscarriage of justice would result.  *See Schlup v. Delo*, 513 U.S. 298, 321 (1995);

*Coleman*, 501 U.S. at 750; *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977); *Cook v. Schriro*, 538 F.3d 1000, 1025-26 (9th Cir. 2008) (absent a showing of cause and prejudice, petitioner is barred from raising a claim on federal habeas review where he failed to meet state's contemporaneous objection rule).

The cause standard requires Petitioner to show that "some objective factor external to the defense" or constitutionally ineffective assistance of counsel impeded his efforts to comply with the state's procedural rule. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986). For ineffective assistance of counsel to constitute cause, the ineffective assistance claim must have been presented as an independent claim to the state courts. *Id.* at 489. Moreover, Petitioner must establish that his attorney was "constitutionally ineffective under the standard established in *Strickland v. Washington*, [466 U.S. 668 (1984)]." *Murray*, 477 U.S. at 488.

Here, Amezcua raised an ineffective assistance of counsel claim on appeal in state court, based on counsel's failure to object during closing argument. (*See* Lodgment No. 3 at 38-40, ECF No. 7-7.) For the reasons discussed below in section V(D) of this Report and Recommendation, however, Petitioner's claim does not amount to constitutionally ineffective assistance of counsel under *Strickland* because counsel's performance was not deficient. *See Cunningham v. Wong*, 704 F.3d 1143, 1159 (9th Cir. 2013) (stating that failure to object during closing argument is within the 'wide range' of permissible professional legal conduct). Amezcua has therefore not established cause to excuse the procedural default.

Nor has he established prejudice. To satisfy the prejudice part of the cause-and-prejudice test, Amezcua must show actual prejudice resulting from the errors of which he complains. *See McCleskey v. Zant*, 499 U.S. 467, 494 (1991). Prejudice is "actual harm resulting from the claimed constitutional violation." *LaGrand v. Stewart*, 173 F.3d 1144, 1148 (9th Cir. 1999) (citing *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984). Here, as discussed in section V(D) below, the prosecutor's statements during closing argument were not prejudicial because the jury was properly instructed on corpus delicti

by the trial judge.  *United States v. Mendoza*, 244 F.3d 1037, 1045 (9th Cir. 2001) (stating that a misstatement of law by a prosecutor can be rendered harmless by the court's proper instruction to the jury).

Finally, Petitioner has not alleged that a miscarriage of justice will result should the Court not consider the claim.  The miscarriage of justice exception provides that a federal court may still hear the merits of procedurally defaulted claims if the petitioner can make a showing of actual innocence.  *See McQuiggin v. Perkins*, 569 U.S. 383, 393-94 (2013).  "The miscarriage of justice exception is limited to those extraordinary cases where the petitioner asserts his innocence and establishes that the court cannot have confidence in the contrary finding of guilt."  *See Johnson v. Knowles*, 541 F.3d 933, 936-38 (9th Cir. 2008) (emphasis in original).

Petitioner has not established that the Court cannot have confidence in his guilt.  To demonstrate "actual innocence," Amezcua must present new reliable evidence, such as exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence, that would create a credible claim of actual innocence.  *Schlup*, 513 U.S. at 321.  Petitioner merely argues there was insufficient evidence to corroborate his pretrial admissions.  (*See* Pet. at 6, 8, ECF No. 1.)  Given Amezcua's inculpatory statements to detectives, he cannot establish actual innocence.  *See id.*

In sum, the state court denied this claim pursuant to adequate and independent state procedural grounds that were correctly applied and as such, federal habeas review of this claim is defaulted.  *See Coleman*, 501 U.S. at 729-30.  Petitioner has failed to demonstrate either cause and prejudice to excuse the default, or that the failure to consider this claim on the merits would result in a miscarriage of justice.  *See Schlup*, 513 U.S. at 324.

### 3. Merits

Even if the claim were not procedurally defaulted, Petitioner would not be entitled to relief.  Because the state court did not discuss the merits of this claim, the Court reviews it de novo.  *See Pirtle v. Morgan*, 313 F.3d 1160, 1167-68 (9th Cir. 2002)

(holding that where "there is no state court decision on [the merits of the constitutional violation alleged] to which to accord deference," courts review the claim de novo").

A criminal defendant's due process rights are violated when a prosecutor's misconduct results in a trial that is "fundamentally unfair." *See Darden v. Wainwright*, 477 U.S. 168, 193 (1986); *Smith v. Phillips*, 455 U.S. 209, 219 (1982) ("[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor."). To obtain federal habeas relief on this claim, Amezcua must do more than demonstrate that the prosecutor's comments were improper. *Tak Sun Tan v. Runnels*, 413 F.3d 1101, 1112 (9th Cir. 2005); *see also Darden*, 477 U.S. at 180-81. He must show they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden,* 477 U.S. at 181 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)); *accord Greer v. Miller*, 483 U.S. 756, 765 (1987); *Tak Sun Tan*, 413 F.3d at 1112; *Thompson v. Borg*, 74 F.3d 1571, 1576 (9th Cir. 1996). If prosecutorial misconduct is established, and it was constitutional error, the court must decide whether the constitutional error was harmless. *Thompson*, 74 F.3d at 1576-77.

Where a habeas claim of prosecutorial misconduct during closing argument is alleged, the likely effects of the prosecutor's statements are examined "in the context in which they were made to determine 'whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Turner v. Calderon*, 281 F.3d 851, 868 (9th Cir. 2002) (quoting *Darden*, 477 U.S. at 181)). "A court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations." *Donnelly*, 416 U.S. at 647. During closing arguments, a prosecutor is allowed a reasonably wide latitude and can argue reasonable inferences from the evidence. *Fields v. Brown*, 431 F.3d 1186, 1206 (9th Cir. 2005); *United States v. Gray*, 876 F.2d 1411, 1417 (9th Cir. 1989). However, it is improper for a prosecutor to make statements or inferences to the jury that he knows to

be false or has a strong reason to doubt. *United States v. Reyes*, 577 F.3d 1069, 1077 (9th Cir. 2009).

Here, Petitioner contends the prosecutor misstated the corpus delicti rule when he told the jury that the corpus of a section 288(a) violation could be established by evidence of other molestations. Specifically, Amezcua claims the prosecutor misstated the law when he argued as follows:

> Cassandra testified she was touched at least twice in San Diego. Multiply molestations can be corpus for multiple acts of molestation because children are not going to remember. If you're being abused over a period of time, especially when you're young, you're not going to either remember or be aware of it because the crime occurs solely with the defendant who is charged with this crime. And that's because the defendant has to act willfully by touching a child and then with the lewd intent. The child's mindset -- the child doesn't have to agree to it. It has nothing to do what the child's action are or what the child's state of mind is. A defendant can be guilty of molesting a child, if I presented corpus of multiple.

(Lodgment No. 2, Rep.'s Tr. vol. 2 at 52, ECF No. 7-3.) Petitioner also points to a portion of the prosecutor's rebuttal argument, during which he stated:

> Corpus instruction, and I'm just going to quote the paragraph from it. I want you to read the whole thing tonight. I don't want to take it out of context. 359, that other evidence may be slight -- need only be enough to support a reasonable inference that a crime was committed. So for the purposes of corpus, only two instances in which Cassandra said she was touched inappropriately. That's more than slight. That's a lot more than slight evidence. Other evidence. So we have it. We know that he committed those offenses. In Riverside county we have the slight evidence to support that charge for the corpus rule and hold him accountable for those acts.

(*Id.* at 104.)

First, it is far from clear that the prosecutor misstated the law with regard to California's corpus delicti rule. As discussed above, the appellate court found that in cases of child molestation, California courts have held that evidence of multiple

molestations can provide corroboration sufficient to satisfy the corpus delicti rule. Relying on *Culton*, 11 Cal. App. 4th at 363 and *Tompkins*, 185 Cal. App. 4th at 1260, the court stated that "separate evidence is not required as to each individual count to establish the corpus delicti; rather, evidence that multiple molestations took place will establish the corpus delicti for multiple counts." (Lodgment No. 6 at 12, ECF No. 7-10.)

While it is true that the dissenting judge in this case found *Tompkins* and *Culton* distinguishable from Amezcua's case (*see* Lodgment No. 6 at 20-26, ECF No. 7-10), this Court must defer to the state court's majority conclusion. *See Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1997) (stating that federal habeas courts must "accept a state court's interpretation of state law"); *Bradshaw*, 546 U.S. at 76 ("[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.").

Moreover, even assuming the prosecutor's characterization of corpus delicti was inaccurate, Petitioner has not shown it rendered the trial fundamentally unfair. "A slight misstatement of law by a prosecutor can be rendered harmless by the court's proper instruction to the jury." *United States v. Mendoza*, 244 F.3d 1037, 1045 (9th Cir. 2001). Here, the trial judge instructed the jury on the corpus delicti requirement, using the standard California Criminal Jury Instruction No. 359, as follows:

> The defendant may not be convicted of any crime based on his out-of-court statements alone. You may rely on the defendant's out-of-court statements to convict him only if you first conclude that other evidence shows that the charged crime was committed.
>
> That other evidence may be slight and need only be enough to support a reasonable inference that a crime was committed.
>
> This requirement of other evidence does not apply to proving the identity of the person who committed the crime. If other evidence shows that the charged crime was committed, the identity of the person who committed it may be proved by the defendant's statements alone.

/ / /

You may not convict the defendant unless the People have proved his guilt beyond a reasonable doubt.

(Lodgment No. 1, Clerk's Tr. at 182-83, ECF No. 7-1.) This standard instruction has been held to be an accurate statement of California's corpus delicti law. *People v. Rosales*, 222 Cal. App. 4th 1254, 1260 (Cal. App. 2014) (holding CALCRIM No. 359 "correctly states the law"). The prosecutor specifically referred to this instruction during his rebuttal argument and urged the jurors to read the entire instruction. (Lodgment No. 2, Rep.'s Tr. vol. 2 at 52, ECF No. 7-3.) The jury also was instructed that the trial court's instructions constituted the law that applied to the case and to follow the law as the trial court explained it. (Lodgment No. 1, Clerk's Tr. at 119, ECF No. 7-1.) The trial court instructed the jury specifically about statements regarding the law made by the attorneys during closing arguments, stating:

If you believe that the attorneys' comments during their closing arguments when they talk – if they talk about the law and it conflicts with my instructions, you must follow my instructions. So I want you to pay careful [attention], follow these instructions, and consider them as a whole.

(Lodgment No. 2, Rep.'s Tr. vol. 2 at 29, ECF NO. 7-3.) The jury is presumed to follow the trial court's instructions. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000). Thus, even assuming the prosecutor misstated corpus delicti law during closing, given the instructions provided the jury by the trial court, given the instructions provided the jury, it did not "so infect[] the trial with fundamental unfairness" as to result in a denial of due process. *See Darden*, 477 U.S. at 1181.

### 4. Conclusion

In sum, Petitioner's prosecutorial misconduct claim is procedurally defaulted. *See Coleman*, 501 U.S. at 729-30. Even assuming the claim was not barred from review, Amezcua would not be entitled to relief because has cannot establish that his due process rights were violated by the prosecutor's closing argument. *See Darden*, 477 U.S. at 193. Claim three is **DENIED**.

### D.     Ineffective Assistance of Counsel (ground four)

Lastly, Amezcua contends that trial counsel was ineffective in failing to object to the prosecutor's purported misstatement of the law regarding corpus delicti during closing argument.  (Pet. at 9, ECF No. 1.)   Respondent argues that the claim must be denied because the state court's denial of the claim was neither contrary to, nor an unreasonable application of, clearly established law.  (Mem. P. & A. Supp. Answer at 15-16, ECF No. 6-1.)

#### 1. *State Court Decision*

As with his other claims, Petitioner raised this argument in his petition for review to the California Supreme Court.  (Lodgment No. 7, ECF No. 7-11.)  This Court looks through the California Supreme Court's silent denial to the reasoned opinion of the California Court of appeal.  *See Ylst*, 501 U.S. at 805-06.

The appellate court denied the claim, stating:

> In order to establish ineffective assistance of trial counsel, an appellant must first show that counsel's performance fell below the appropriate standard of care, i.e., a significant error or failure to act.  Once error is shown, the defendant must also show prejudice by establishing that there is a reasonable likelihood a more favorable result would have occurred in the absence of counsel's failure.  (*Strickland v. Washington* (1984) 466 U.S. 668, 687.)  Amezcua has not met his burden on this issue.
>
> There is nothing in this record to explain why trial counsel did not object to the argument, which has been identified on appeal.  Given the considerable deference afforded to trial counsel's tactical decisions we have nothing from which we can assess counsel's performance on this record.  As our Supreme Court has pointed out it is often difficult on appeal to assess counsel's failure to take some action that appellate counsel now deems necessary.  In *People v. Mendoza Tello* (1997) 15 Cal.4th 264, 267-268, the court noted that in such cases the appellant's remedy, if any, is by way of a petition for writ of habeas corpus.

/ / /

/ / /

/ / /

We find it unnecessary to address the prejudice prong of *Strickland v. Washington*, supra, 466 U.S. 668, other than to observe the challenged comments of the prosecutor are almost quotes from *Culton*, supra, 11 Cal.App.4th at page 367, and *Tompkins*, supra, 185 Cal.App.4th at page 1260. The current record presents no discernable prejudice to the defendant.

(Lodgment No. 6 at 18, ECF No. 7-10.)

        *2. Discussion*

    To establish ineffective assistance of counsel, a petitioner must first show his attorney's representation fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.

    Amezcua must also show he was prejudiced by counsel's errors. *Id.* at 694. Prejudice can be demonstrated by a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*; *see also Fretwell v. Lockhart*, 506 U.S. 364, 372 (1993). "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112 (citing *Strickland*, 466 U.S. at 693). The Court need not address both the deficiency prong and the prejudice prong if the defendant fails to make a sufficient showing of either one. *Id.* at 697.

    There is a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Id.* at 686-87. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Representation is constitutionally ineffective only if it 'so undermined the proper functioning of the adversarial process' that the defendant was denied a fair trial." *Strickland*, 466 U.S. at 687.

    Under the standards of both 28 U.S.C. § 2254(d) and *Strickland*, judicial review is "highly deferential and when the two apply in tandem, review is doubly so." *Richter*, 562

U.S. at 105 (internal quotation marks and citations omitted). As a result, "the question [under § 2254(d)] is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.* The *Strickland* prejudice analysis is complete in itself and there is no need for an additional harmless error review under *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). *See Musladin v. Lamarque*, 555 F.3d 830, 834 (9th Cir. 2009) ("[W]here a habeas petition governed by AEDPA alleges ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), we apply *Strickland's* prejudice standard and do not engage in a separate analysis applying the *Brecht* standard."); *Avila v. Galaza*, 297 F.3d 911, 918 n.7 (9th Cir. 2002).

Here, Petitioner has not shown defense counsel's failure to object during closing argument amounted to deficient performance. The Ninth Circuit has indicated that "[b]ecause many lawyers refrain from objecting during opening statement and closing argument, absent egregious misstatements, the failure to object during closing argument and opening statement is within the 'wide range' of permissible professional legal conduct." *Cunningham v. Wong*, 704 F.3d 1143, 1159 (9th Cir. 2013), (quoting *United States v. Necoechea*, 986 F.2d 1273, 1281 (9th Cir. 1993)); *cf. Zapata v. Vasquez*, 788 F.3d 1106, 1116 (9th Cir. 2015) (holding that "patent, inflammatory and repeated misconduct" was "egregious").

The prosecutor's statements concerning corpus delicti rule were not egregious misstatements of the law. As discussed above in section V(C)(3), the prosecutor made two brief references to the corpus delicti rule during argument and rebuttal. And based on the appellate court's majority decision, the prosecutor's description of the rule was consistent with California law. The appellate court specifically found that evidence of multiple molestations could be sufficient to provide corroboration of Petitioner's pretrial admissions. (*See* Lodgment No. 6 at 9-13, ECF No. 7-10.) While the dissenting justice may have rule differently, this Court defers to the majority decision. *See Bradshaw*, 546 U.S. at 76 ("[A] state court's interpretation of state law, including one announced on

direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). As such, defense counsel's failure to object to the brief references to corpus delicti law was a reasonable tactical decision. *See Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (deference to counsel's tactical decisions in closing is particularly important because of the broad range of legitimate defense strategy at that stage); *Necoechea*, 986 F.2d at 1281 (counsel's failure to object during closing argument within the wide range of reasonable professional assistance for which a strong presumption of sound judgment is due); *see also Clabourne v. Lewis*, 64 F.3d 1373, 1383 (9th Cir. 1995) (no error found where counsel may have had many reasons for not objecting or interrupting during opening or closing); *Cunningham*, 704 F.3d at 1159 (stating that a decision not to object a prosecutor's comments during closing, in order to avoid highlighting them, was a reasonable strategic decision).

Moreover, defense counsel's failure to object was not prejudicial. Because the prosecutor's statements during closing were not inconsistent with California law, Petitioner cannot establish a reasonable probability that the result would have been different had defense counsel objected. *See Strickland*, 466 U.S. at 689; *see also Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996) (concluding that there was no prejudice when there was no reasonable probability the petitioner would have prevailed on the issue had an objection been raised by defense counsel); *James v. Borg*, 24 F.3d 20, 27 (9th Cir. 1994) ("Counsel's failure to make a futile motion does not constitute ineffective assistance of counsel.).

Accordingly, the state court's denial of Petitioner's ineffective assistance of counsel claim was neither contrary to, nor an unreasonable application of, clearly established law. *See* 28 U.S.C. § 2254(d); *Williams*, 529 U.S. at 407-08. Claim four is therefore **DENIED**.

/ / /

/ / /

/ / /

## VI.  CERTIFICATE OF APPEALABILITY

Under AEDPA, a state prisoner seeking to appeal a district court's denial of a habeas petition must obtain a certificate of appealability.  28 U.S.C. § 2253(c)(1)(A).  The district court may issue a certificate of appealability if the petitioner has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To satisfy this standard, a petitioner must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The federal rules governing habeas cases brought by state prisoners require a district court that issues an order denying a habeas petition to either grant or deny a certificate of appealability.  *See* Rules Governing § 2254 Cases, Rule 11(a).  The Ninth Circuit has noted that the standard for granting a certificate of appealability is "relatively low."  *Jennings v. Woodford*, 290 F.3d 1006, 1010 (9th Cir. 2002).   A petitioner "need not show that he should prevail on the merits," *Lambright v. Stewart*, 220 F.3d 1022, 1025 (9th Cir. 2000), but may be entitled to a certificate when the "questions are adequate to deserve encouragement to proceed further."  *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983) (citation omitted), superseded on other grounds by 28 U.S.C. § 2253(c)(2).  Here, Petitioner has made "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and reasonable jurists would find debatable this Court's assessment of Petitioner's claim that there was insufficient evidence, due to a purported lack of corpus delicti, to support counts seven, nine and ten.  *See Slack*, 529 U.S. at 484.  Accordingly, a certificate of appealability is **GRANTED** on claim one.[7]  A certificate of appealability is **DENIED** as to claims two, three and four.

/ / /

/ / /

---

[7] Petitioner is advised that despite the grant of a limited certificate of appealability, if he wishes to appeal he must file a notice of appeal within thirty days of the date the judgment is entered.  *See* Rule 11(b), Rules Governing § 2254 Cases.

## VII.  CONCLUSION

Based on the foregoing, the Court **DENIES** the petition for writ of habeas corpus and **GRANTS** a limited certificate of appealability as to claim one and **DENIES** a certificate of appealability as to claims two, three and four.

**IT IS SO ORDERED.**

Dated:  May 29, 2019

Hon. Gonzalo P. Curiel
United States District Judge